oral argument not to exceed 15 minutes per side, for the defendant appellate. Yes, I'd like to reserve four minutes for my rebuttal. Fine, and counsel who are arguing may remove their masks if they wish. But you may keep it on if you wish. I just didn't leave it on at this point.   It involves a search warrant. The charges in this case are felon in possession of a firearm, possession with intent to distribute drugs, and use of a firearm in furtherance of a drug transaction. The search warrant, however, was drafted in a state proceeding, in a state investigation for a homicide. The search warrant sought to search cell phones, but in the facts supporting the probable cause for the search warrant, it does not mention cell phones. The only thing that happens is the police officer gives his opinion that he ought to be entitled to look at the cell phone of anybody that's basically arrested for a homicide, or my guess is they would argue that whatever they're investigating, they're allowed to look at. There was nothing in the affidavit that said anything about seeing a cell phone in the possession of either of the two defendants, or that cell phones were used, or there was any communication. It's just a bare bones assertion that they have a right to look at a search warrant. The cell phones may or may not have been present. My client was arrested about a week later, and at that time he did have possession of two cell phones. They did not, the results of the homicide investigation were not clearly, weren't really discussed, and they used some text that they located on the cell phone related to what they felt were drug transactions. So you're saying the affidavit was prepared before the actual seizure of the defendant? I don't know if it was prepared before or after the seizure of the defendant. It refers to his arrest and the presence, but... I thought that he had the phone on him. At the time of his arrest, but not at the time, but that was not at the scene of the homicide that was the subject of the investigation. He was actually arrested for, I forget what it was, it was some misdemeanor warrant that they had outstanding. That was the only thing he was arrested for initially. Now they filed a complaint in federal court. The arrest was late Monday afternoon. I'm sorry that I'm maybe missing the facts here. I thought he was arrested because he was viewed in the process of a drug transaction. But you're saying the only reason he was arrested was a prior arrest warrant? It was some misdemeanor warrant. The testimony at trial was the officer who testified that she saw a drug transaction. She also testified that she had not put that in her report and that the first time she was talking about it was when she was on the witness stand at trial. Okay, so why under our precedent is this affidavit not sufficient to allow the search of the cell phones? Because it doesn't connect, the probable cause doesn't say anything about cell phones. Well, it says, doesn't it say that the affiant knows through training and experience that people involved in criminal activity regularly use mobile electronic devices? Basically what? That the affiant believes that by searching this phone, information could be developed concerning Smith's possessing of a firearm in conjunction with the murder. And I believe that the Riley v. California is the case that the Supreme Court talks about the ability or the government cannot simply ransack one's personal belongings to search for guilty information. He wasn't being arrested for drug transactions or the homicide. He was being arrested on a misdemeanor warrant. But the affidavit says that the Kalamazoo police got information from a source who is kept anonymous but they know the source. It says that Smith was present at the scene of the shooting and Smith and Walker fired guns at the deceased person. Whether or not that source saw that or whether he was relating other people saying that, I don't know. Forgetting that issue, he doesn't know anything about cell phones. There's nothing that says that there were cell phones at the scene or that they were being used. There has to be a nexus between what is being sought to search and the offense. I don't understand your argument because it would seem that your stronger argument would be there was an anonymous source and the affidavit doesn't say that the police had previously used the source and found him to be reliable. It doesn't say anything like that. Then the affidavit says that these two individuals were present at the scene of the shooting but it doesn't say how they arrived at the conclusion  It says something about people, by training and experience, people involved in criminal activity regularly employ mobile devices. Well, that's all right, but everybody uses mobile devices so that doesn't mean a whole lot. I can't find any probable cause here and I don't think your argument is honing in on that. I tried to do that, Your Honor. I talked about the confidential informants in the brief as well as the nexus issue in the brief. I'm sorry that I'm not waiving that issue. I think that is a very viable issue. Okay. Looking at your main brief, your main brief, as I recall, does not talk about the good faith exception and that was one reason that the district judge gave for upholding the search of the cell phone. Did you not waive or forfeit the argument that this ruling of the district judge on good faith was an independent basis for upholding the search? My thinking on that was that the government would raise it if they wanted to. The district judge said, if the warrant is invalid, nonetheless I uphold the search on the basis of the good faith exception. So you didn't address that in your main brief. So that whole rationale of the district court remains standing after your main appellate brief. That's true. I did not talk about good faith in there. I was thinking, my thinking was, that there were so little facts to justify good faith that the judge had nothing on which to base it.  And if that's the case, then my client probably needs to come back on the 2255. But my thinking was that there was so little support for that argument in the case. And I addressed it then in the reply brief. So why, going to the merits of the good faith, why is, assuming that we agree with your argument in your brief that this warrant was not sufficient, the affidavit was not sufficient, why wouldn't the good faith exception apply? There are no facts. We don't know why they did it. There's nothing in the record about them consulting with the... But why couldn't the officer rely on the fact that a state court judge had signed this warrant? Was it really a bare bones affidavit? Yeah, I think so. There were so few facts in the affidavit itself that any officer should have known that this was not an adequate affidavit to support a search warrant. When it comes to the good faith exception, we don't avail or provide or acquiesce in the good faith exception because the state officer signed the warrant, do we? Don't we perform a de novo review of the circumstances to see if the circumstances justified the officer believing that what he was doing was supported by probable cause or reasonable suspicion? In other words, the review by us to ferret out whether good faith exception is there is a de novo review, is it not? I believe so, yes. Well, let me just say on that point that it's a little confusing to me exactly what point you're talking about in all of this because we don't review a magistrate's determination of probable cause de novo and the standard is that we can only overturn a magistrate's decision if the magistrate acted arbitrarily in exercising his or her authority. Yeah, I would agree with that, Your Honor. I'm not saying that it's de novo review of probable cause. But we don't get to examining the good faith exception unless there's an absence of probable cause. Otherwise, there's no reason to go to de novo review. Isn't that what the law is, counsel? I believe so, Your Honor. Unless there are any further questions, we'll give you your rebuttal time. May it please the court, my name is Timothy Verhey. I represent the United States on this appeal and I was also one of the trial counsel below. First, let me note and pick up, I guess, on what Judge Guy just touched on which is my opponent is, I think, asking you the wrong question or asking you to answer the wrong question. The question here is not whether there was probable cause or wasn't probable cause. The proper question is whether the warrant that was signed by Judge Blatchford is so lacking in probable cause that it overcomes the great deference that we must give the issuing magistrate. And with all due respect to my opponent, I say that's not the case here. Detective Gates gave Judge Blatchford abundant facts in this case to issue this warrant. The very first thing that Detective Gates told the judge was this was a shooting involving five people. Walker, Smith, apparently were the shooters, and then three victims, one of whom died, Londrell Cook. Are you talking about what's in the affidavit or are you talking about what you understand the magistrate was orally told that we have to sort of take your word for? No. Right in the affidavit, the very first thing the detective told the judge is I'm investigating a shooting that occurred in Kalamazoo on April 11th. And then the known but person that wishes to remain anonymous said that Walker and Smith fired at the person who died and that one of those two people may have suffered a gunshot wound. But what about the problem that the, first of all, it doesn't say that the anonymous source has proven to be credible or reliable in the past and why he is viewed as credible and reliable. And then it says that these people were, the defendant and this other individual were present at the scene of the shooting. But it doesn't say where that statement comes from. In other words, it doesn't say that that was witnessed by the anonymous source. It's just, the statement is just stuck in there that these two people were present at the shooting. How do you get the probable cause based on that? Well, I start with Dyer and May, which are the two decisions we cite in our brief that talk about people who give information to the police that are known to the officer that is swearing out the affidavit but are not named in the affidavit. But the affidavit doesn't say that they're known. We don't know if they, based on the affidavit, we can't tell anything about this anonymous source. I believe, Your Honor, that the officer said, and I think directing everyone to page 147, page ID, that a known source wanting to remain anonymous has told officers that Smith and Walker were present and fired at the victims. And then that's followed by... Wait a minute, are you quoting from the affidavit in support of the search warrant or where are you quoting from? I don't see that in the affidavit. You don't see where he said a known source wanting to remain anonymous? Yeah, I see that. Okay, that's what I'm talking about. The other statements you were making, I don't see. Okay, I'm referring to page 147, and I think it goes to 148. So here's what I understand the affidavit to say. We can all read it, so you don't have to take my word for it, but this is what I took away from it. We have a known source wanting to remain anonymous who says, Smith and Walker were at the shooting, they shot their guns, and one of them may have been hit with a gunshot wound themselves. Multiple sources, those aren't identified any further at all, also told Kalamazoo police officers that Smith and Walker were present at the shooting and were involved. Okay, so you're reading the first paragraph on the top of page 147, right? Your Honor, I didn't actually bring a hard copy. I will read it. Following the initial investigation, Kalamazoo police obtained information from a source who is known but who has requested anonymity at this time. That does not say that this officer knows this person, this source. It says the Kalamazoo police, whoever they are, obtained information from a source who is known but who has requested anonymity at this time. Yes. So I think Dyer and May tell us that if that person who is known to the police is corroborated, that's given a lot of weight because the police will go after you if you provide them false information. There are legal ramifications to a person like that that aren't available to the police if you just call anonymously as a tipster and hang up and they don't know. The affidavit doesn't say that the person is known to the police. It certainly doesn't say who in the police department knows him, but it doesn't even say he's known to the police. It just says he's a known person. I don't have the slightest idea what that means. Well, I guess my response to that would be really the only reasonable reading that the issuing magistrate could have possibly put on that is known to the police because we're all known to somebody. My mother knows me. That's the point. Somebody may have come off the street and recommended this anonymous source to the police. That might have been how he got to the police. And that's not far-fetched. We simply don't know. I guess I would argue that that would be a strained reading of what the officer put in his affidavit. A source that's known but wishes to remain anonymous, a very reasonable takeaway is to the police. But here's what I think this affidavit gave the issuing magistrate to conclude there is probable cause. A number of people saw or witnessed this shooting. There were five people involved in the shooting. Walker and Smith were identified as the shooters. One of the shooters might have gotten hit with gunfire. The police find Smith and Walker one week later. Both of them have loaded guns on them. They're not arrested together. They're arrested the same day, coincidentally, but they both have loaded guns on them. That corroborates that they walk around with loaded guns. The police in the affidavit say, Look, we know Walker and Smith. We know that they engage in violence. We know they carry weapons. And then when Walker's arrested one week after this homicide-slash-shooting, he's got what the officer arresting him says is a gunshot wound, a fresh gunshot wound. So that, to me, is abundant evidence of probable cause that Walker and Smith were involved in the shooting somehow. So going on to the... Was Walker arrested in connection with this shooting or a different shooting? According to the affidavit, he was... What indicates he received the wound in connection with this shooting rather than another incident? Well, there's a gunshot wound. I think that's all the police can surmise. I think everybody could agree that that's an unusual thing to walk around with in the ordinary course of a normal person's life. I've never been shot by anyone, much less in more than one incident. The affidavit says that sources advised the police that these two were present and involved in the shooting, but it doesn't say anything about who these sources are. That's correct. That's correct. So you have to put, as I think the law clearly says, you put all the circumstances together. You don't do the divide-and-conquer approach where you say, well, this isn't very good, this isn't very good, this isn't very good. You look at everything in the totality, and you've got about seven factors here. But why do you get to search the cell phone? Okay. I think that's an important thing to go back to this Williams case that I put in my recent letter, which says, the issuing magistrate, as part of his or her discretion, is allowed to draw reasonable inferences from the facts presented. Quoting here, the magistrate can infer a nexus depending upon the type of crime being investigated, the nature of the things to be seized, and the normal inference that can be drawn as to likely hiding places. So here we've got, I think it's very important, this crime involved multiple people. There's two shooters and three victims. Let's put aside who it is for a minute. We've got cases like the Golston case, which we cited to Judge Maloney, and I think we cited in our brief, which is just an example of a case that says, look, where there's crimes involving multiple people, the inference that they're going to be communicating with each other goes way up. Golston is helpful, I think, because it cites other cases that say so. It's not a standalone case. So it says, if you've got multiple people involved in a crime, it's a very reasonable inference. The basic principle that you're wanting us to endorse is that if you have a crime with two or more people, all of their cell phones can be seized. Well, if there's a link that can be inferentially at least made to possible communications on that phone. But you're assuming that people who are present at the scene of a shooting, two people who are present at the scene of a shooting, will communicate on cell phones. And the concern that I have is that there's no limiting principle here, the way you described it. We have evidence from various sources that these two guys were involved in this shooting a week earlier. And therefore, we can search their cell phones. And it just strikes me as a big invasion of people's privacy. Well, I can see the concern to a rule that any time you arrest somebody and they have a cell phone on them, you can search the cell phone. I think that would be a stretch. Even if, and don't forget that the officer here has 15 years' experience, says he finds information on cell phones all the time, even in violent crime cases, which don't typically involve a lot of communication, like fraud cases might, for example. I realize that I'm sort of speculating here, but lots of times people like to brag about what they have done. And so any officer could say, in my experience, and be truthful about it, in my experience, a lot of times people who are involved in a shooting like to brag about that. So then you could even extend it to a single person being involved in a shooting and say, in my experience, people brag about their exploits. Possibly. And I don't want to slide by the question you're posing here, because I know you're trying to come up with a rule. But where you have two people involved in the crime, there's a very reasonable inference, according to Golston, in cases like it, that say they're going to talk about this beforehand, perhaps. Hey, when are we going to meet to go get involved in the shooting? Where are the people that we're going after? There might be communications. Hey, where are they? Does anybody know this? Are they going to communicate to us about this? Afterwards, and remember, we're talking about only a week interval between the seizure of Smith's phone and the shooting. The police are looking for these guys everywhere. People are very likely to be saying, hey, the police just talked to me. What's this about? Were you at that shooting? Or things like that. Plus we have the fact that there's guns involved. And I will say, based on my training experience, you only have to be working in law enforcement as a police officer or a prosecutor for about a week before you realize that people like to show pictures of their guns on social media or take pictures on their cell phone. And so the fact that these guys might have pictures of themselves with their guns on the cell phone, that would be a piece of evidence. Just their association with each other about anything would be a step towards saying, well, they're the two people involved because they associate with each other. Counsel? Yes, sir. Counsel, I'm trying to cut through some of this. Clearly, if somebody is only alleged to be involved with a crime himself, without more, you're not going to be able to just start paging through a cell phone. The essence here is this was a dually committed crime. And the likelihood is, and they also talked about the meeting at the gas station and so forth and so forth, the likelihood is that these people, it's a reasonable inference, let me put it, that the two people who are involved would communicate by cell phones because that's the way everybody communicates today. That's our position. And if I could just take 15 seconds, I'm running out of time here, to talk about good faith for a moment. This court en banc decided, U.S. v. Christian, about three years ago. And the reason that they took it up en banc, at least one of the reasons was, a lot of decisions were coming out from the district court saying, hey, if this probable cause doesn't exist in the warrant, ipso facto, there's no lee on good faith. And the en banc court said, that's not correct. There has to be what they term daylight between a warrant that doesn't have probable cause and a warrant that is so defective that lee on doesn't apply. Well, here, I mean, I listed for you why I think there's probable cause and the Golston case says it's a reasonable inference. I think there's plenty of evidence for a reasonable officer to say, yes, this is, I believe this warrant was issued, I have it, I went to the trouble of getting it, here's all the facts I put in there, I think there's probable cause, and I think any reasonable officer looking at it would have the same conclusion. So this is not a bare bones warrant. A bare bones warrant is essentially where you say, trust me, I'm a police officer, I think there's probable cause to be found wherever I want to search. There's a lot of facts in this warrant. So I think absent a showing, which frankly isn't my job, but my opponent's job, that this is bare bones, there's plenty of facts in here to say this is not a bare bones warrant and it was reasonable for this officer to rely on it in good faith. So I see I've gone over my time and I haven't even talked about the other issue, but unless you have questions, I'll rely on the brief. One question that I did have is what testimony was introduced as a result of the search of the cell phone? What I would term drug talk. So we had an expert DEA agent come in and say, here are the habits and practices of people engaged in drug trafficking. And one is you meet your customers at locations around town and sell them drugs and they contact you around town to meet you. And he observed some text messages on the cell phone where people were, according to him, setting up meetings with Smith to sell drugs. And then that leads into what the officer inside the marathon station actually saw when they were trying to execute this warrant on the 18th. She said she saw Smith pull up to the gas pump. He didn't get gas and he never went inside the station. All he did is walk up to a green vehicle that pulled up, leaned in for a few seconds, apparently handed something to the person inside and walked away. Well, there were texts on the phone that talked about, hey, where are you at? I want to buy something. Meet me at the marathon station. Right, and so he's convicted of a drug crime as a result of what drugs were found on him at that stop, right? Yeah, he had methamphetamine on him, $2,300 in cash on him, and a loaded gun. Yeah, and he's convicted of gun crimes. The 924C and the felon. So what I'm wondering is, is the evidence that was admitted as a result of the cell phone search, even if we were to say it was error, it would be harmless error? Well, it certainly would be harmless as to the felon in possession charge because that didn't rely on the drug texts at all. It played, I'm not going to conceal anything, it played a little bit of a role in explaining that he was a drug dealer and that this officer happened to see a drug deal right before they arrested him, but the quantity of the drugs involved and the cash involved and the fact that he had a gun, juries convict people all the time of drug trafficking and 924C just on that. And you didn't argue harmless error either? No, we didn't. We did not. Any further questions? Thank you. In our reply brief, we discuss both the Geyer and the May cases. And the information provided to the magistrates in those cases was much more extensive than anything than what was provided to the magistrate in this case. And I believe as to the opinion evidence that one can infer cell phones are used in whatever criminal enterprise is being done is what the Supreme Court was talking about in the Riley case. And that because they haven't connected cell phones to this particular crime, that's why I emphasized that issue in the argument. As to the harmless error issue, I think, I believe the last substantive discussion of the evidence was reference to the text that were introduced from the cell phone. The idea that they observed a drug transaction was pretty iffy because the main witness that was in the store testified that she hadn't even put it in her reports and had not talked about it until she was basically at trial. The other people who testified said they really didn't see anything. They saw no hand-to-hand transaction. They just saw talking or they saw contact. They didn't actually see any of the drugs passing. Any questions? I have no further points. Well, thank you. Thank you for your argument, and the case will be submitted. Would the clerk call the next case, please?